FILED
2014 Aug-11  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CAMERON WHITTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:12-cv-3987-AKK |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Cameron Whitton ("Whitton") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Whitton, whose past relevant experience includes work as a stock clerk and a tree trimmer helper, filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income on October 21, 2008, alleging a disability onset date of August 15, 2009, due to arthritis, back problems and anxiety.  (R. 31, 175, 222).  After

the SSA denied Witton's claim, he requested a hearing before an ALJ.  (R. 91-92).  The

ALJ subsequently denied Whitton's claim, (R. 28-43), which became the final decision

of the Commissioner when the Appeals Council refused to grant review.  (R. 22-26).

Whitton then filed this action for judicial review pursuant to § 205(g) of the Act, 42

U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*,

672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal

standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*,

792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the

Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not

reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the

decision is "reasonable and supported by substantial evidence.  *See id*.  (citing

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence

falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such

relevant evidence as a reasonable person would accept as adequate to support a

conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other

citations omitted).  If supported by substantial evidence, the court must affirm the

Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Whitton had not engaged in substantial gainful activity since August 15, 2008, and, therefore, met Step One.  (R. 33).  Next, the ALJ found that Whitton satisfied Step Two because he suffered from the severe impairments of "bipolar disorder and panic disorder." *Id*.  The ALJ then proceeded to the next step and found that Whitton failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 36).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that Whitton has the residual functional capacity (RFC) to perform

> a full range of work at all exertional levels: The claimant can perform simple, routine tasks and follow short, simple instructions, but not more detailed or complex instructions/tasks.  The claimant can make simple work-related decisions with few workplace changes and any workplace changes should be infrequent and introduced gradually.  The claimant can

4

never interact with the public and occasionally interact with co-workers
and supervisors.  Supervision should be non-confrontational.  The claimant
can sustain concentration and attention for two hours at one time with
normal breaks throughout an eight-hour day.

(R. 38).  In light of his RFC, the ALJ held that Whitton "is capable of performing past

relevant work as a stock clerk and tree trimmer helper."  (R. 42).  Therefore, the ALJ

found that Whitton "has not been under a disability, as defined in the Social Security Act,

from August 15, 2008, through the date of this decision."  *Id.*

## V.  Analysis

The court now turns to Whitton's contentions that the ALJ erred because he (1)

did not give proper weight to the opinion provided by his treating psychiatrist; and (2)

gave significant weight to the opinion of the State agency reviewing psychiatrist.  *See*

doc. 7 at 5-8.  The court addresses each contention in turn.

A.   The ALJ had good cause for rejecting the opinion of Whitton's treating
     psychiatrist.

Whitton contends the ALJ erred in rejecting the opinions of his treating

psychiatrist.  The record shows Whitton first saw Dr. Simon McClure on October 27,

2009, reporting that he needed to have his medicines renewed because they were

working.[1]  (R. 363).  Dr. McClure found Whitton's mood was stable, noted he reported

---

[1]   Prior to seeing Dr. McClure, Whitton presented to the emergency room at UAB
Hospital on three occasions between August 20, 2009, and October 14, 2009.  At each
visit, Whitton requested and received refills of his psychiatric medications after reporting
that he had missed his follow-up appointment with his psychiatrist, Dr. Langlow.  (R.
269-70, 303-04, 332-33).  However, there are no treatment notes from Dr. Langlow in
(continued...)

feeling well and was staying calm, and renewed his medications.  *Id.*  At his next visit on

April 2, 2010, Whitton reported that although his medications were generally helpful, he

felt more depressed at times.  (R. 367).  Dr. McClure noted Whitton was "unable to

work," *id.*, and completed a supplemental questionnaire indicating extreme limitations in

the areas of maintaining social functioning; concentration, persistence, and pace; and

responding appropriately to co-workers in a work setting.  (R. 365-66).  The record

contains no further treatment notes from Dr. McClure.

     To determine how much weight to give Dr. McClure's opinion, the ALJ had to

consider several factors, including whether Dr. McClure (1) had examined Whitton; (2)

had a treating relationship with Whitton; (3) presented medical evidence and explanation

supporting the opinion; (4) provided an opinion that is consistent with the record as a

whole; and (5) is a specialist.  *See* 20 C.F.R. § 416.927(c).  Because Dr. McClure is a

treating physician, the ALJ must give "controlling weight" to his opinion if it "is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence."  20 C.F.R. § 416.927(c)(2).

Moreover, in this circuit "the testimony of a treating physician must be given substantial

or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*,

---

[1] (...continued)
the record.  At his final visit to UAB, Whitton was diagnosed with "[p]robable drug-
seeking behavior," and told that he would "not have any more controlled substances
filled in this Emergency Department and that he needs to get a psychiatrist to follow
him."  (R. 370).

125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records.  *Id*.  Finally, if the ALJ rejects a treating physician's opinion, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion . . . and the failure to do so is reversible error."  *Id*.

Here, the ALJ correctly applied the law and articulated multiple reasons, all of which are supported by substantial evidence, for giving Dr. McClure's opinions little weight.  First, the ALJ explained that while Dr. McClure was a specialist in the area of psychiatry and had a short treating relationship with Whitton, the limitations he assessed "are not supported by the evidence as a whole."  (R. 41-42).  To support his finding, the ALJ observed, in part, that when Dr. Clyde McLane treated Whitton in November 2008, he assessed a "Global Assessment of Functioning equal to 65, indicating some mild symptoms or some difficulty in social, occupational or school functioning but generally functioning pretty well."  (R. 33, 241).  The ALJ also noted that Whitton returned to Dr. McLane only once, and that "Dr. McLane found [Whitton's] symptoms to be only mild and there is no evidence of any further treatment until almost a year later when he requested medications from UAB Hospital."  (R. 40).  Based on a review of the record, the court finds no error by the ALJ because good cause exists to reject a medical opinion when, as here, medical records show sporadic medical visits.  *Petteway v. Comm'r of Soc. Sec.*, 353 F..App'x 287, 290 (11th Cir. 2009) (unpublished).

Second, and more importantly, the ALJ found Dr. McClure's opinions were "inconsistent with [his] own narrative reports and notes," and explained that Whitton's "mental status examinations have been essentially normal and Dr. McClure's treatment notes show a good response to . . . prescribed medication." (R. 42). Indeed, the ALJ observed that at his initial visit, Whitton reported to Dr. McClure that "his medications were working as he was staying calm, he had been feeling well, and he was able to look after his daughter." (R. 40). The ALJ also noted that Dr. McClure reported Whitton's "mood was stable, he slept well, his energy was good, his appetite and weight were stable, and there were no medication side effects." *Id.* Finally, the ALJ observed that Whitton "has continued treatment with Dr. McClure and appears to be doing well with continued compliance," and at his April 2010 visit "reported that medications were helpful and no abnormalities were noted in his mental status examination." *Id.*

Based on this record, the court finds that the ALJ considered the factors set forth in the regulations, and consistent with the law of this circuit, articulated good cause for giving Dr. McClure's opinions little weight: i.e., that Dr. McClure's opinions were inconsistent with his own treatment notes and the medical evidence from other physicians. Because medical opinions must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive controlling weight, 20 C.F.R. § 416.927(c)(2), and because substantial evidence supports the ALJ's findings, the ALJ had good cause for not giving Dr. McClure's opinions controlling weight. Therefore, the court finds no reversible error.

B.     The ALJ did not err in giving significant weight to the opinion of
       the State agency reviewing psychiatrist.

Finally, Whitton contends that the ALJ improperly gave significant weight to Dr.

Robert Estock, the State agency reviewing psychiatrist.  However, the record does not

support Whitton's contention.  The court notes that an ALJ must consider the findings of

a State agency medical consultant, who is considered an expert, and must explain the

weight given to such findings in the same way as with other medical sources.  *See* 20

C.F.R. § 416.927(e)(2).  Consistent with the regulation, the ALJ gave Dr. Estock's

opinion that Whitton was capable of "understanding, remembering and carrying out

simple instructions with some social limitations" significant weight based on Dr.

Estock's "specialization and expertise in the area of psychology" and "familiarity with

the disability program and its requirements."[2]  (R. 42).  Moreover, contrary to Whitton's

contention, the ALJ committed no error because although "the report of a non-examining

doctor is accorded little weight if it contradicts an examining doctor's report," an ALJ

may rely on the report when it does not contradict the findings of examining doctors.

*Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  There is no such contradiction

here because, as discussed above, *see* Section V.A., *supra*, the ALJ properly rejected the

---

[2]     The ALJ also stated that Dr. Estock "reviewed all medical evidence of record,"
(R. 42), which was true as of the time of Dr. Estock's report.  Significantly, the treatment
records after Dr. Estock's report was issued support his opinions because they show that
Whitton's mental status exams were essentially normal and that his medications were
effective at ameliorating his mental symptoms.  *See* Section V.A., *supra*.

opinions of Dr. McClure.[3]  Therefore, based on this record, the ALJ did not err in giving

Dr. Estock's opinions significant weight.

### VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that

Whitton is not disabled is supported by substantial evidence, and that the ALJ applied

proper legal standards in reaching this determination.  Therefore, the Commissioner's

final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of

decision will be entered.

Done the 11th day of August, 2014.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[3]    For the same reasons, the ALJ also reasonably rejected the opinions of Dr.
Alan Blotcky, Ph.D., (R. 357-361), who examined Whitton at the request of his attorney.
Moreover, because Whitton does not argue on appeal that the ALJ improperly rejected
Dr. Blotcky's opinions, that issue has been abandoned.  *U.S. v. Cunningham*, 161 F.3d
1343, 1344 (11th 1998).